UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Todd M. Horstkotte

    v.                                                                       Civil No. 08-cv-285-JL

William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.[1]


**REPORT AND RECOMMENDATION**

Before the Court is Todd Horstkotte's complaint (document no. 1), filed pursuant to 42 U.S.C. § 1983. Horstkotte brings this action against William Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC") and other NHDOC and New Hampshire State Prison ("NHSP") employees, alleging that the defendants violated his federal constitutional rights during his incarceration at the NHSP. The complaint is before me for preliminary review to determine whether, among other things, it

---

[1] In addition to Wrenn, Horstkotte names the following defendants to this action: New Hampshire State Prison ("NHSP") Warden Richard Gerry, New Hampshire Department of Corrections ("NHDOC") Deputy Commissioner Christopher Kench, NHSP Corrections Officer ("C.O.") Brian Bernard, NHSP C.O. Luca Susca, and NHSP Secure Housing Unit Manager Normand Marquis, as well as a John Doe defendant who is described as the third shift officer in charge of the Secure Housing Unit.

states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. Id. In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and

inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true." This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Todd Horstkotte, at the time complained of, was an inmate at the NHSP's Secure Housing Unit ("SHU"). On January 13, 2008, at 5:30 a.m., Horstkotte told a SHU officer he did not receive his 5:00 a.m. medication and asked the officer to check on it. At 6:30 a.m., Horstkotte had not heard what happened with his medication. Horstkotte asked SHU Corrections Officer Brian Bernard, who was conducting a routine health and safety check of the inmates, to check on his medication. Bernard refused to check on the medication because he was leaving for the day and had not been responsible for the medication during his shift. Horstkotte, in response to Bernard's refusal, asked Bernard for his name and told Bernard that he intended to grieve the incident. Bernard then agreed to look into the medication situation.

Five minutes later, Bernard returned to Horstkotte's cell with an empty medication card, which indicated that Horstkotte had no medication left on his prescription.  Bernard slammed the card against Horstkotte's door grate and told him that all he was getting was an empty card.  Horstkotte stated that his medication should be available to him because he filled out the refill slip several days prior to that and gave it to a nurse.  Bernard said that there was no refill at SHU, and that if Horstkotte ever threatened him with a grievance again, that he would physically harm Horstkotte.

Horstkotte then told Bernard that he was going to file a grievance against him for threatening him with physical harm. Several seconds later, the third shift Officer-in-Charge (hereinafter "the John Doe defendant") appeared at Horstkotte's cell door and ordered him to place his hands through the slot in the cell door behind him to be handcuffed.  Horstkotte complied, and the John Doe defendant removed Horstkotte from his cell and placed him in the dayroom.  Bernard and the John Doe defendant, when they moved Horstkotte, did not wear the standard SWAT-style protective gear generally worn by SHU officers moving inmates. The John Doe defendant placed Horstkotte firmly against the wall

in the dayroom and yelled at him about threatening officers with grievances.  Horstkotte responded by telling the John Doe defendant that he intended to grieve the entire incident.  The John Doe defendant said, "That's it!" and then uncuffed Horstkotte and told him to place his hands on his head or he would be "taken down" to the floor as an aggressor.  Horstkotte was strip searched and left in the dayroom.  As Horstkotte got dressed, he saw both of the involved officers wearing their coats and getting ready to leave.

At the 7:00 a.m. count that morning, Horstkotte asked to speak with Corporal Tchudin.  Tchudin told Horstkotte that he received a report that Horstkotte had threatened an officer, and that Bernard was going to write the incident up when he returned to duty that evening.[2]  Horstkotte relayed the events of the morning to Tchudin.  Tchudin then returned Horstkotte to his

---

[2]Horstkotte complains that Bernard, by not filing a report on the incident prior to the end of his shift, violated prison administrative procedures.  Even generously construing this allegation as an assertion of a due process violation, I cannot find that Horstkotte has alleged sufficient facts to demonstrate that he was deprived of any constitutional right or interest by Bernard's delay in writing a disciplinary report, even if it was contrary to the letter of the prison's administrative policies.  Accordingly, I will not construe the complaint as containing a due process claim based on technical violations of administrative rules.

cell. That evening, Sgt. Luca Susca investigated the incident and advised Horstkotte that he was being charged with a disciplinary infraction.

On January 18, 2008, Horstkotte grieved the issuance of the disciplinary ticket to NHSP Warden Richard Gerry, but no action was taken. SHU Unit Manager Normand Marquis responded to Horstkotte with a copy of the grievance and asked Horstkotte what action he wanted Marquis to take. Horstkotte told Marquis he simply wanted his grievance processed according to prison policy. Horstkotte eventually grieved the matter to NHDOC Commissioner William Wrenn. NHDOC Deputy Commissioner Christopher Kench responded to the grievance but took no remedial action on it.

A disciplinary hearing was held, and Horstkotte was found not guilty of the infractions charged, as the charging officers failed to demonstrate that any threat was made, or any harm done. Further, the officers failed to specify any actual disruption on the unit by Horstkotte.

Horstkotte alleges that the disciplinary report was retaliatory, and issued to cover up Bernard's own bad behavior regarding the refusal to check on Horstkotte's medication, and to protect himself from any grievance Horstkotte might file.

Discussion[3]

I.  Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983;[4] Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Because

---

[3]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Horstkotte disagrees with this identification of the claims, he must do so by objecting to this Report and Recommendation or properly moving to amend his complaint.

[4]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

7

Horstkotte's claim alleges a violation of federal constitutional law by state actors, his suit arises under § 1983.

## II. Retaliation Claim

Horstkotte alleges that the strip search and disciplinary action taken against him were retaliatory. Horstkotte claims that these actions were not provoked by any action on his part, and instead, were retaliatory, motivated by Horstkotte's statements expressing his intent to file grievances against Bernard and the John Doe defendant.

Even assuming, arguendo, that the NHSP officials could conduct a strip search of Horstkotte or file a disciplinary action against him without infringing any interest protected by the constitution, they may not do so to punish Horstkotte for engaging in conduct protected by the First Amendment. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was taken in retaliation for his exercise of First Amendment speech."); Oropallo v. Parrish, No. 93-1953, at *3, 1994 WL

168519 (D.N.H. May 5, 1994), aff'd, 23 F.3d 394 (1st Cir. 1994) (conduct on the part of prison officials that is "not otherwise constitutionally deficient is actionable under § 1983 if done in retaliation for the exercise of constitutionally protected first amendment freedoms."). A retaliation claim has three elements: (1) the plaintiff was engaged in protected conduct; (2) the defendants took an adverse action against the plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct; and (3) that there is a causal connection between the adverse action and the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999); Soto v. Iacavino, No. 01 Civ. 5850 (JSM), 2003 WL 21281762 at *2 (S.D.N.Y. June 4, 2003).

As to the first element, Horstkotte contends that he was engaged in protected First Amendment speech by advising Bernard and the John Doe defendant of his intention to file grievances against them. The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967). In the prison context, this right means that inmates must be

"permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc); see Hudson v. Palmer, 468 U.S. 517, 523 (1984). Accordingly, to the extent that Horstkotte, by telling the officers involved that he believed they were taking grievable actions against him, was engaged in grievance procedures, his actions were protected by the First Amendment.

The First Amendment protects an individual's freedom of speech in both oral and written form. See U.S. Const. amend. I; Palmigiano v. Travisono, 317 F. Supp. 776, 786 (D.R.I. 1970). Expressing an intent to file a grievance is speech, and as such, is protected by the First Amendment. Horstkotte was exercising a legitimate First Amendment right when he expressed an intention to file grievances against Bernard and the John Doe officer.

As to the second element of a retaliation claim, Horstkotte alleges that adverse action was taken against him when he was strip searched, and then again when he was charged with disciplinary infractions for "threatening" to file a grievance against an officer and causing a disruption on his unit. There

is no question that, whether or not a strip search or disciplinary action might be warranted in certain circumstances, that they constitute adverse actions against an inmate at the NHSP.  Horstkotte has alleged that Bernard and the John Doe defendant took adverse actions against him.

Finally, Horstkotte must demonstrate that there is a causal connection between the adverse actions complained of and his exercise of his First Amendment rights.  I find that, for purposes of preliminary review, Horstkotte has alleged sufficient facts to enable me to draw the inference that the strip search and disciplinary charges were made in response to Horstkotte's expressed intention to file grievances against Bernard and the John Doe defendant.  As the allegations in the complaint, if true, satisfy the elements of a retaliation claim, I will direct, in an Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), that the retaliation claim be served on Bernard and the John Doe defendant.[5]

---

[5]The John Doe defendant has been identified by Horstkotte as the third shift Officer-in-Charge of the SHU on January 13, 2008.  As such, he should be identifiable upon Horstkotte's receipt in discovery of certain prison records and information.  Upon service of this action on defendants, Horstkotte can serve the named defendants with interrogatories to obtain the full name of

III. Official Capacity Claims

Horstkotte has sued the defendants in their official as well as individual capacities.  It is well-settled that the Eleventh Amendment bars damages suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official

---

the John Doe defendant pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Once Horstkotte obtains the name of the John Doe defendant, he may seek to add that defendant to this action.  Upon the addition of that defendant to this action, the Clerk's office will be directed to effect service upon him.

capacities are "persons" under § 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n.55 (1978). Accordingly, I construe the claims raised in the complaint as claims against the defendants in their individual capacities, and I recommend that the official capacity claims against the defendants be dismissed from this action.

IV.  Supervisory Liability

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted). A supervisor must "either [be] a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" to the violation alleged to provide a basis for supervisory liability. Id. at 44. A defendant supervisor can be held liable based on the defendant's actual notice of facts sufficient to

render the official responsible for reasonable inquiry into the complaint.  See Feliciano v. Dubois, 846 F. Supp. 1033, 1045 (D. Mass. 1994) (citing Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981)).  A supervisor also may be held liable for his own acts, or omissions, if they rise to the level of reckless or callous indifference to the constitutional rights of others.  See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994).  Finally, a supervisor may be held liable under § 1983 if he or she "formulates a policy or engages in a practice that leads to a civil rights violation committed by another."  Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

Defendants Wrenn, Kench, Gerry, and Marquis each serve a supervisory function within the NHDOC and/or the NHSP.  I find that Horstkotte has sufficiently alleged that defendants Wrenn, Kench, Gerry, and Marquis each knew of plaintiff's retaliation allegations, as Horstkotte fully explained his concerns to them by using the administrative grievance process at the prison.  The supervisory defendants also make clear, in their responses to those grievances, that they were aware of the problem but did not feel it necessary to take any action to remedy it.  The responses to Horstkotte's grievances, coupled with the supervisors'

knowledge of the circumstances described in this complaint, suffice to state claims against Wrenn, Kench, Marquis and Gerry in their supervisory capacities. In the Simultaneous Order, I will direct that these supervisory defendants be served with this action.

V.    Defendant Sgt. Luca Susca

Horstkotte names Susca as a defendant to this action. The complaint, however, does not allege facts which connect Susca's actions in investigating and serving the disciplinary report to any retaliatory intent. Even liberally construing the allegations in the complaint, I cannot find that any constitutional violation by Susca has been alleged. Accordingly, I recommend that Susca be dismissed from this action.

Conclusion

For the foregoing reasons, I recommend that any intended due process claim based on technical violations of administrative policies, defendant Susca, and the official capacity claims alleged be dismissed from this action. In my Simultaneous Order, I direct that the retaliation claim be served on defendants Bernard, Wrenn, Kench, Marquis, and Gerry in their individual capacities. I also authorize service of the retaliation claim on

the John Doe defendant in his individual capacity when and if Horstkotte amends his complaint to identify him by name.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                                      _____
                                                      James R. Muirhead
                                                      United States Magistrate Judge

Date:    January 16, 2009

cc:      Todd M. Horstkotte, pro se